## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

IRA ALSTON,

                Plaintiff,

  v.

AFONSO LINDSEY, DAVID JOSEFIAK,
TUTTLE, GREGIO ROBLES, BRIAN
JACKSON, ANNE COURNOYER, LISA
MOSIER, KRISTIN CARABINE,
VICTORIA SCRUGGS, SEAN GUIMOND,
MIHALIAK, KIMBER, HAFNER, FELIZ,
CASSIDY, CICHOCKI, MUNSON,
BOUDREAU,

                Defendants.

3:15-CV-1673 (CSH)


**JANUARY 22, 2016**

## INITIAL REVIEW ORDER

HAIGHT, Senior District Judge:

Plaintiff, Ira Alston, currently incarcerated at the Northern Correctional Institution in Somers, Connecticut, has filed this civil rights action *pro se* under section 1983 of title 42 of the United States Code. Alston brings his Complaint against Defendants Lieutenant Afonso Lindsey, Lieutenant David Josefiak, Captain Tuttle, Captain Gregio Robles, Captain Brian Jackson, Warden Anne Cournoyer, Nurse Lisa Mosier, Nurse Kristin Carabine, Nurse Victoria Scruggs, Lieutenant Sean Guimond, Correctional Officer Mihaliak, Correctional Officer Kimber, Correctional Officer Hafner, Correctional Officer Feliz, Correctional Officer Cassidy, Correctional Officer Cichocki, Correctional Officer Munson and Correctional Officer Boudreau. Doc. 1. All Defendants are named in their individual and official capacities.

## I.      STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints "as soon as practicable after docketing," and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.

A *pro se* complaint is adequately pled if its allegations, liberally construed, could "conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). However, even though liberally construed, a *pro se* plaintiff must adhere to the Federal Rules of Civil Procedure, including Rule 8, which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     ALLEGATIONS

The following facts, recited in the light most favorable to Plaintiff, derive from his Complaint, filed November 17, 2015. Compl. [Doc. 1].

Alston is currently confined at the Northern Correctional Institution, where the incident giving rise to the Complaint occurred. On April 21, 2015, Defendants Feliz and Munson escorted

-2-

Alston to the shower. *Id.* ¶ 2. While he was showering, Defendants Feliz, Munson, Boudreau, Kimber, Cichocki, Mihaliak, Cassidy and Hafner entered Alston's cell, destroying personal and legal property and disorganizing all of Alston's legal materials. *Id.* ¶¶ 3-5. When Alston returned to his cell, he asked Defendant Feliz what caused the destruction in his cell. *Id.* ¶ 6. Defendant Feliz stated that "this is how we feel about jailhouse lawyers." *Id.* ¶ 7 (identifying that Alston currently has six pending civil rights lawsuits in this District).

Alston asked Defendants Munson and Feliz to summon a shift supervisor, which they refused. *Id.* ¶ 8. Alston, in an attempt to "get the attention of the shift supervisor," then refused to permit Defendants Munson and Feliz to remove his handcuffs. *Id.* ¶ 9. During this standoff, Defendant Mihaliak told Alston that the corrections officers would not get in trouble for what they did to his cell because the cell was not visible on the surveillance cameras. *Id.* ¶¶ 10-11. Defendant Kimber eventually summoned a shift supervisor. *Id.* ¶ 12.

When Defendants Lieutenants Lindsey and Guimond came to the cell, Alston informed them of what the corrections officers had done to his cell, but they refused to look into the cell to view the destruction. *Id.* ¶¶ 13-15. Instead, they demanded that Alston place his hands through the trap in the cell door to have the handcuffs removed. *Id.* ¶ 15. Defendants Lindsey and Guimond refused to document the damage to Alston's belongings, stating that they saw nothing to document. *Id.* ¶¶ 16-17. Alston asked Defendants Lindsey and Guimond to record the state of Alston's cell on a handheld camera. *Id.* ¶ 19. Defendant Lindsey refused and stated that a handheld camera would only be used to document Alston's placement on in-cell restraint status if he failed to return the handcuffs. *Id.*

Defendant Lindsey ordered Defendant Munson to get a handheld video camera and called

for a mental health staff member to come to Alston's cell for verbal intervention.  *Id.* ¶¶ 21-22.

Mental health worker Patrick Ward, a non-party, arrived and spoke with Alston, a conversation that

was recorded on the video camera operated by Defendant Munson.  *Id.* ¶ 23.  When Ward looked

into Alston's cell, he stated that he had seen worse.  *Id.* ¶ 25.  Ward agreed to Alston's request that

he be a witness to the damage, which led Alston to agree to return the handcuffs.  *Id.* ¶ 26.[1]

When Alston turned around to place his hands through the trap, Defendant Lindsey directed

Alston to lie face-down on the bottom bunk for application of restraints so that Alston could be

placed on in-cell restraint status.  *Id.* ¶ 26.[2]  Defendant Munson, who was operating the video

camera, purposefully failed to capture the damage to Alston's cell pursuant to the order of Defendant

Lindsey.  *Id.* ¶¶ 27-28 (Defendant Munson "strategically maneuver[ed] the camera footage").

Defendants Lindsey, Cassidy, Hafner and Boudreau applied shackles and a tether chain and escorted

Alston to another housing unit where he remained on in-cell restraints for three days.[3]  *Id.* ¶ 29.

These Defendants intentionally made use of a tether chain that was shorter than that normally

used, which caused Alston to remain bent over at the waist.  *Id.* ¶¶ 31-32.  Despite knowing that

Alston's handcuffs were already too tight at this point, Defendant Lindsey directed Defendant

Cassidy to tighten them even more, which Defendant Cassidy did.  *Id.* ¶¶ 33-36.  The handcuffs

caused Alston pain, and left a bruise and scar on his wrists that were still visible as of the date he

---

[1]  Plaintiff's complaint contains two paragraphs that are numbered "26."  This citation is to the first Paragraph 26.

[2]  This citation is to the second Paragraph 26.

[3]  According to Plaintiff's complaint, "[i]n-cell restraint status is the placement of an acutely disruptive inmate inside a strip-cell in handcuffs (in front), leg irons and a tether chain between the leg irons and the handcuffs."  *Id.* ¶ 30.

filed the Complaint.  *Id.* ¶¶ 37-38.  Alston complained about the pain and suffering caused by the restraints and requested that they be adjusted.  *Id.* ¶ 39.  The restraints were used "solely to punish and harass" Alston.  *Id.* ¶ 42.  Defendants Lindsey and Guimond, "who had opportunity and authority to adjust the restraints[,] did nothing," nor did those Defendants or Defendants Boudreau, Hafner, or Cassidy investigate Alston's complained-of pain and suffering.  *Id.* ¶¶ 39-40.  Further, Defendants Cournoyer, Robles, Guimond, Lindsey, and Tuttle all "approved of the in-cell restraint placement and the type of restraints used."  *Id.* ¶ 41.

At the direction of Defendants Cournoyer, Josefiak, Robles, Guimond, Bradley, Lindsey, and Tuttle, Alston remained on in-cell restraints for three days.  *Id.* ¶ 43.  At all times, he was compliant with all rules and regulations and was never disruptive or misbehaving.  *Id.* ¶ 44.  Defendants Cournoyer, Jackson, Robles, Tuttle, Josefiak, Lindsey, and Bradley "continue[d] plaintiff on in-cell restraint status for three (3) days without need or valid penological justification."  *Id.* ¶ 45.  During his confinement, Alston spoke with Defendants Cournoyer, Robles, Tuttle, Josefiak, Jackson, Guimond, Lindsey, and Bradley, and showed them how tight the restraints were and that they were "causing pain, bruising and unnecessary suffering."  *Id.* ¶¶ 46-47.  Despite these conversations, and that they were aware of Alston's pain and suffering, at no time did any of these Defendants investigate Alston's claims or take any corrective action, nor take him off in-cell restraint status.  *Id.* ¶¶ 48-49.

Alston also spoke with Defendants Nurses Mosier, Carabine, and Scruggs during his confinement.  *Id.* ¶ 50.  He informed each nurse that his restraints were too tight and were causing pain and suffering.  *Id.* ¶ 51.  None of them properly checked the restraints, or investigated or reported any of his claims. *Id.* ¶¶ 52-54 (they "did nothing" "despite first hand knowledge that the

restraints were much too tight"). Rather, the nurse Defendants created false reports that they checked the restraints, that they were appropriate, and that Alston did not voice a complaint of harm. *Id.* ¶ 55. These false reports were part of "a calculated, intentional design to prevent the plaintiff from proving the extent and cause of his injuries in a court of law." *Id.* ¶ 56. Defendants Cournoyer, Jackson, Robles, Tuttle, Josefiak, Lindsey, and Guimond told Defendants Mosier, Carabine, and Scruggs "to create false reports to prevent the plaintiff from proving the extent and cause of his pain, suffering, and injuries." *Id.* ¶ 60.

When he was removed from in-cell restraint status, Alston informed Defendant Bradley of his injuries. *Id.* ¶ 57. Defendant Bradley then stated that Defendant Scruggs would document Alston's injuries. *Id.* ¶ 58. However, Defendant Scruggs never did so, and, rather, he "created reports indicating the plaintiff had no injuries and voiced no complaints of harm, pain and suffering." *Id.* ¶ 59.

In light of the above allegations, Alston seeks "nominal, compensatory and punitive damages as well as declaratory and injunctive relief and attorney fees and costs," totaling $3,500,000. *Id.* at 1, 19.[4]

## III.   ANALYSIS

Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Further, "[w]hile *pro se* litigants are accorded a liberal construction of their

---

[4] These page number references refer to the PDF pages from the CM/ECF heading.

pleadings, they are still required to comply with the court's rules." *Deyo v. I.R.S.*, 2002 WL 1482517, at *1 (D. Conn. Apr. 25, 2002) (dismissing *pro se* complaint without prejudice for failure to adhere to Fed. R. Civ. P. 8(a)(2)).

Plaintiff has failed to comply with Fed. R. Civ. P. 8(a)(2) because his Complaint nowhere identifies the actual substantive "claim showing that [he] is entitled to relief."  The Complaint's only reference to a source of law is a checkmark next to the statement that Plaintiff is suing "[s]tate, county or city employees for violating [his] federal rights under 42 U.S.C. Sec. 1983." Compl. [Doc. 1], at 2.  However, "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation omitted).  That being the case, a Section 1983 plaintiff must identify specifically which federal rights were violated by each Defendant.  *See Carris v. First Student, Inc.*, – F. Supp. 3d –, 2015 WL 5535807, at *27 (N.D.N.Y. Sept. 18, 2015) (a "plaintiff asserting a § 1983 conspiracy claim must first successfully allege a violation of the underlying constitutional right").  This the Plaintiff has entirely failed to do.[5]  For example, although Plaintiff alleges facts that may amount to constitutional violations, his Complaint makes not one citation to the constitution itself.  Failing to do so, Plaintiff has not followed the dictates of Fed. R. Civ. P. 8(a)(2).

---

[5]  Plaintiff seems to understand the need to specifically identify a federal right underlying a Section 1983 claim.  In each of his seven other Section 1983 lawsuits on this Court's docket, he specifically identified a federal right underlying his Section 1983 claim.  *See Alston v. Lantz*, No. 12-cv-00147; *Alston v. Murphy*, No. 12-cv-00811; *Alston v. Pafumi*, No. 13-cv-00001; *Alston v. Chapdelaine*, No. 15-cv-00434; *Alston v. Daniels*, No. 15-cv-00669; *Alston v. Cournoyer*, No. 15-cv-00961; *Alston v. DelPeschio*, No. 15-cv-01672.  Moreover, in the instant Complaint, Plaintiff describes the *Cournoyer* action as involving a "violation of the 8[th] and 14th Amdt[s] to the U.S. Const for alleged excessive use of force and unconstitutional conditions of confinement."  Compl. [Doc. 1], at 4.  It is this type of statement that is missing from the instant Complaint.

IV.     **CONCLUSION**

If Plaintiff so chooses, he may file an amended complaint within **thirty (30) days** from the date of this order to rectify the pleading deficiencies identified in this ruling.  If Plaintiff elects not to file an amended complaint, this action will be dismissed with prejudice for failure to adhere to Fed. R. Civ. P. 8.  If an amended complaint is filed, the Court will review its claims pursuant to 28 U.S.C. § 1915A.

**It is SO ORDERED.**

**Dated:  New Haven, Connecticut**
**                January 26, 2016**

                                                                    */s/ Charles. S. Haight, Jr.*
                                                                    **Charles S. Haight, Jr.**
                                                                    **Senior United States District Judge**

-8-