## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
                                    :
IRA ALSTON,                         :
   plaintiff,                       :
                                    :
     v.                             :  CASE NO. 3:15-cv-1673 (AVC)
                                    :
ALFONSO LINDSEY, ET AL.,            :
   defendants.                      :
```

### RULING AND ORDER

The plaintiff, Ira Alston, confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case pro se under 42 U.S.C. § 1983. On January 22, 2016, Court, Haight, D.J., noted that Alston failed to identify any federal rights violated by the defendants and permitted him to amend his complaint to do so. Alston has filed an amended complaint setting forth the same factual allegations and identifying various federal and state claims. He names the same defendants: lieutenants Alfonso Lindsey, David Josefiak and Sean Guimond, captains Tuttle, Gregio Robles and Brian Jackson, warden Anne Cournoyer, nurses Lisa Mosier, Kristin Carabine and Victoria Scruggs, and correctional officers Mihaliak, Kimber, Hafner, Feliz, Cassidy, Cichocki, Munson and Boudreau. All of the defendants are named in their individual and official capacities.

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Id. In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also

2

Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).

## FACTS

The amended complaint alleges the following facts.  The plaintiff is currently confined at the Northern Correctional Institution, where the incident giving rise to the amended complaint occurred.  On April 21, 2015, the defendants, Feliz and Munson, escorted Alston to the shower.  While he was showering, the defendants, Feliz, Munson, Boudreau, Kimber, Cichocki, Mihaliak, Cassidy and Hafner, entered Alston's cell, destroying personal and legal property and disorganizing all of his legal materials.  When Alston returned to his cell, he asked Feliz what caused the destruction in his cell.  Feliz stated that "this is how we feel about jailhouse lawyers."

Alston asked Munson and Feliz to summon a shift supervisor, which they refused to do.  Alston, in an attempt to "get the attention of the shift supervisor," then refused to permit Munson and Feliz to remove his handcuffs.  During this standoff, Mihaliak told Alston that the correctional officers would not get in trouble for what they did to his cell because the cell was not visible on the surveillance cameras.  Kimber eventually summoned a shift supervisor.

3

When the defendants, lieutenants Lindsey and Guimond, arrived at the cell, Alston informed them of what the correctional officers had done to his cell, but they refused to look into the cell to view the destruction.  Instead, they demanded that Alston place his hands through the trap in the cell door to have the handcuffs removed.  Lindsey and Guimond refused to document the damage to Alston's belongings, stating that they saw nothing to document.  Alston asked Lindsey and Guimond to record the state of his cell on a handheld camera. Lindsey refused and stated that a handheld camera would only be used to document Alston's placement on in-cell restraint status if he failed to return the handcuffs.

Lindsey ordered Munson to get a handheld video camera and called for a mental health staff member to come to Alston's cell for verbal intervention.  Mental health worker Patrick Ward, a non-party, arrived and spoke with Alston, a conversation that was recorded on the video camera operated by Munson.  When Ward looked into Alston's cell, he stated that he had seen worse. Ward agreed to Alston's request that he be a witness to the damage, which led the plaintiff to agree to return the handcuffs.

When Alston turned around to place his hands through the trap, Lindsey directed him to lay face-down on the bottom bunk for application of restraints so that the plaintiff could be placed on in-cell restraint status. Munson, who was operating the video camera, purposefully failed to capture the damage to Alston's cell pursuant to Lindsey's order.  According to the complaint, Munson "strategically maneuver[ed] the camera footage".  The defendants, Lindsey, Cassidy, Hafner and Boudreau, applied shackles and a tether chain and escorted Alston to another housing unit where he remained on in-cell restraints for three days.[1]

These defendants intentionally made use of a tether chain shorter than that normally used, which caused Alston to remain bent over at the waist.  Despite knowing that the plaintiff's handcuffs were already too tight at this point, Lindsey directed Cassidy to tighten them even more and Cassidy tightened them. The handcuffs caused Alston pain, and left a bruise and scar on his wrists that were still visible as of the date he filed the

------------------------------------------------------------

[1] According to the plaintiff's amended complaint, "[i]n-cell restraint status is the placement of an acutely disruptive inmate inside a strip-cell in handcuffs (in front), leg irons and a tether chain between the leg irons and the handcuffs."

complaint.  Alston complained about the pain and suffering
caused by the restraints and requested that they be adjusted.
The restraints were used "solely to punish and harass" Alston.
Lindsey and Guimond, "who had opportunity and authority to
adjust the restraints[,] did nothing," nor did those defendants
or the defendants, Boudreau, Hafner, or Cassidy, investigate the
plaintiff's alleged pain and suffering.  Further, the
defendants, Cournoyer, Robles, Guimond, Lindsey, and Tuttle, all
"approved of the in-cell restraint placement and the type of
restraints used."

    At the direction of the defendants, Cournoyer, Josefiak,
Robles, Guimond, Bradley, Lindsey, and Tuttle, Alston remained
on in-cell restraints for three days.  At all times, he was
compliant with all rules and regulations and was never
disruptive and did not misbehave.  The defendants, Cournoyer,
Jackson, Robles, Tuttle, Josefiak, Lindsey, and Bradley,
"continued plaintiff on in-cell restraint status for three (3)
days without need or valid penological justification."  During
his confinement, Alston spoke with the defendants, Cournoyer,
Robles, Tuttle, Josefiak, Jackson, Guimond, Lindsey, and
Bradley, and showed them how tight the restraints were and that
they were "causing pain, bruising and unnecessary suffering."

Despite these conversations, and that they were aware of the plaintiff's pain and suffering, at no time did any of these defendants investigate Alston's claims or take any corrective action, nor did they take him off in-cell restraint status.  The plaintiff also spoke with defendants, nurses Mosier, Carabine, and Scruggs, during his confinement.  He informed each nurse that his restraints were too tight and were causing pain and suffering.  None of them properly checked the restraints, or investigated or reported any of his claims.  The complaint alleges that they "did nothing" "despite first hand knowledge that the restraints were much too tight."  Rather, the nurse defendants created false reports that they checked the restraints, that they were appropriate, and that Alston did not voice a complaint of harm.  These false reports were part of "a calculated, intentional design to prevent the plaintiff from proving the extent and cause of his injuries in a court of law." The defendants, Cournoyer, Jackson, Robles, Tuttle, Josefiak, Lindsey, and Guimond, told the defendants, Mosier, Carabine, and Scruggs, "to create false reports to prevent the plaintiff from proving the extent and cause of his pain, suffering, and injuries."

When he was removed from in-cell restraint status, Alston informed the defendant, Bradley, of his injuries. Bradley then stated that the defendant, Scruggs, would document Alston's injuries. However, Scruggs never did so. Instead, she "created reports indicating the plaintiff had no injuries and voiced no complaints of harm, pain and suffering."

In light of the above allegations, Alston seeks compensatory and punitive damages as well as declaratory and injunctive relief and attorney fees, totaling $2,200,000.

## DISCUSSION

Alston asserts a First Amendment retaliation claim against the defendants, Feliz, Kimber, Munson, Mihaliak, Hafner, Cassidy, Cichocki and Boudreau, for destroying his personal and legal property. He asserts six Eighth Amendment claims for use of excessive force and deliberate indifference to an excessive risk of harm: (1) against Lindsey and Guimond for deciding to place him on in-cell restraint status; (2) against Lindsey and Cassidy for tightening the restraints; (3) against Lindsey, Hafner, Boudreau and Cassidy for placing him in in-cell restraints; (4) against Josefiak, Jackson, Cournoyer, Robles, Tuttle, Lindsey and Guimond for approving and continuing him on in-cell restraints; (5) against Josefiak, Jackson, Cournoyer,

Robles, Tuttle, Lindsey and Guimond for failing to adjust the restraints despite knowledge that the restraints were too tight; and (6) against Mosier, Carabine and Scruggs for failing to cause the restraints to be adjusted despite knowledge that the restraints were too tight.  The plaintiff also asserts state law claims for assault and battery and intentional infliction of emotional distress, and for cruelty to persons in violation of Connecticut General Statutes §53-20.

**I.   Excessive Force**

The use of excessive force against a prisoner can constitute cruel and unusual punishment even where the inmate does not suffer serious injuries.  See Hudson v. McMillian, 502 U.S. 1, 4 (1992), accord Wilkins v. Gaddy, 559 U.S. 34, 34, 36 (2010) (per curiam).  The "core judicial inquiry" is "not whether a certain quantum of injury was sustained but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 7 (internal quotation marks omitted).  Unwarranted placement on in-cell restraint status can constitute the use of excessive force where, as here, Alston alleges that the restraints were used as punishment after he had agreed to release the handcuffs.

9

The various Eighth Amendment claims and the state law claim for assault and battery will proceed at this time.

## II.  **Retaliation**

Prison officials may not retaliate against inmates for exercising their constitutional rights.  To state a claim for retaliation, the plaintiff must allege facts demonstrating: (1) that he was engaged in constitutionally protected activity, (2) the defendants took adverse action against him, and (3) that there is a causal connection between the protected activity and the adverse action.  Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003).  To satisfy the third element, the plaintiff must allege that the protected activity "was a substantial or motivating factor for the adverse action taken" against him.  Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (citation omitted). Here, the plaintiff alleges that the defendants told him that his property was damaged because he was a jailhouse lawyer. This allegation is sufficient to support a retaliation claim at this stage of litigation.

## III. **Intentional Infliction of Emotional Distress**

Alston asserts a state law claim for intentional infliction of emotional distress.  To state such a claim, he must show that the defendants intended to inflict emotional distress or knew or

10

should have known that emotional distress would likely result from their conduct, that the conduct was extreme and outrageous, that the defendants' conduct is the likely cause of the plaintiff's distress and that the plaintiff's distress was severe.  Gagnon v. Housatonic Valley Tourism Dist. Comm'n, 888 A.2d 104, 113 (Conn. App. 2006).  The court must determine whether the defendants' conduct rises to this level by assessing the plaintiff's allegations and determining whether a reasonable factfinder could find the conduct described to be extreme and outrageous.  Id. at 113-14.  Liability for intentional infliction of emotional distress requires "conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."  DeLaurentis v. New Haven, 597 A.2d 807, 828 (Conn. 1991) (internal quotation marks and citation omitted).

Alston alleges that the restraints were applied too tightly causing pain. He remained in this state for three days. Application of in-cell restraints is an approved sanction.  See Department of Correction Administrative Directive 6.5, Section 8(B), www.ct.gov.doc (last visited Nov. 29, 2016). The court concludes, however, that the alleged abuse of this approved

sanction by applying restraints too tightly and ordering their use after the plaintiff had complied with the order to return the handcuffs, exceeds bounds usually tolerated by decent society.  Assuming, as it must at this stage of the proceedings, the truth of the plaintiff's allegations, Alston's claim will proceed at this time.

**IV.  C.G.S. § 53-20**

Finally, Alston asserts a claim for violation of Connecticut General Statute § 53-20.  This is a criminal statute.  The statute contains no provision permitting a private right of action for a violation and research reveals no cases recognizing such a right.  Accordingly, this claim is dismissed as lacking an arguable legal basis.

**CONCLUSION**

The court enters the following orders:

(1)  The claim for violation of Connecticut General Statutes § 53-20 is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  The case will proceed on the remaining claims set forth above.

(2)  **The clerk shall** verify the current work address of each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet

containing the amended complaint to each defendant at that
address within **twenty-one (21) days** of this order, and report to
the court on the status of those waiver requests on the thirty-
fifth (35) day after mailing.  If any defendant fails to return
the waiver request, the clerk shall make arrangements for in-
person service by the U.S. Marshals Service on that defendant in
his individual capacity and the defendant shall be required to
pay the costs of such service in accordance with Federal Rule of
Civil Procedure 4(d).

(3)  **The clerk shall** prepare a summons form and send an
official capacity service packet to the U.S. Marshal Service.
The U.S. Marshal is directed to effect service of the amended
complaint on the defendants in their official capacities at the
Office of the Attorney General, 55 Elm Street, Hartford, CT
06141, within **twenty-one (21) days** from the date of this order
and to file a return of service within thirty (30) days from the
date of this order.

(4)  **The clerk shall** send written notice to the plaintiff
of the status of this action, along with a copy of this order.

(5)  **The clerk shall** send a courtesy copy of the amended
complaint and this ruling and order to the Connecticut Attorney

General and the Department of Correction Office of Legal Affairs.

(6)   The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include any and all additional defenses permitted by the federal rules.

(7)   Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(8)   All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(9)   Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2

14

provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or their attorney of his new address.

(11) The plaintiff shall use the Prisoner Efiling Program when filing all documents with the court.

**SO ORDERED** this 7th day of April 2017 at Hartford, Connecticut.

$$\underline{\hspace{3cm} /s/ \hspace{3cm}}$$
Alfred V. Covello
United States District Judge

15